FILED
CLERK US DISTRICT COURT

JUL 3 1 2000

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

____ **Priority**
✓ **Send**
____ **Clsd**
____ **Enter**
____ **JS-5/JS-6**
____ **JS-2/JS-3**
____ **Scan Only**

ENTERED ON ICMS
JUL 3 1 2000

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

NISSAN MOTOR CO., LTD.;          )   Case No. CV 99-12980 DDP (Mcx)
NISSAN NORTH AMERICA, INC ,      )
                                 )   **ORDER GRANTING IN PART AND**
            Plaintiffs,          )   **DENYING IN PART PLAINTIFFS'**
                                 )   **MOTION TO DISMISS COUNTERCLAIMS**
     v.                          )   [Motion filed on 6-13-00]
                                 )
NISSAN COMPUTER CORPORATION,     )
                                 )
            Defendant.           )
_____)

ENTERED ON ICMS
JUL 3 1 2000

The plaintiffs' motion to dismiss counterclaims was taken under submission without oral argument.  After reviewing and considering the materials submitted by the parties, the Court adopts the following order

## I.    Background

This dispute concerns use of the Internet domain names "nissan.com" and "nissan.net."

Plaintiff Nissan Motor Co., Ltd., is a large Japanese automaker.  Its subsidiary, plaintiff Nissan North America, Inc., markets and distributes Nissan vehicles in the United States.

15

1  Nissan Motor Co. owns, and Nissan North America is the exclusive
2  licensee of, various registered trademarks using the word "Nissan"
3  in connection with automobiles and other vehicles.

4        The defendant, Nissan Computer Corporation, sells computer-
5  related products and services.  The defendant was incorporated in
6  1991 by Uzi Nissan, its current president   The defendant
7  registered the Internet domain names "nissan.com" and "nissan.net"
8  in 1994 and 1996, respectively.  (Countercompl. ¶¶ 92, 94.)  The
9  defendant initially used these domain names to operate websites in
10 connection with its computer-related business.  (Id. ¶ 92.)  In
11 August 1999, the defendant altered the content of its "nissan.com"
12 website to include banner advertisements and web links to
13 automobile merchandisers and other automobile-related sites.  (Id.
14 ¶¶ 102, 125.)

15       On December 10, 1999, the plaintiffs filed a complaint in this
16 Court alleging trademark infringement and other related claims.
17 The Court denied the plaintiffs' request for a temporary
18 restraining order.  The matter subsequently came before the Court
19 on the plaintiffs' motion for a preliminary injunction and the
20 defendant's motion to dismiss for lack of personal jurisdiction and
21 improper venue.

22       On March 23, 2000, the Court issued an order granting the
23 plaintiffs' motion for a preliminary injunction and denying the
24 defendant's motion to dismiss.  The Court found that the plaintiffs
25 had demonstrated a valid, protectable trademark interest in the
26 "Nissan" mark and a likelihood of confusion.  Accordingly, the
27 Court held that the plaintiffs had shown a likelihood of success on
28 the merits of their trademark infringement claim.  The Court

1  ordered the defendant to post prominent identifying captions and

2  disclaimers on its "nissan.com" and "nissan net" websites, and to

3  cease displaying automobile-related content on these websites.

4      On May 10, 2000, the defendant filed counterclaims against the

5  plaintiffs.  The defendant alleges seven causes of action:

6  (1) "reverse domain name hijacking;" (2) interference with

7  prospective economic advantage; (3) unfair competition/unfair trade

8  practices; (4) unjust enrichment/constructive trust;

9  (5) accounting, (6) "trademark misuse/cancellation of

10 registrations;" and (7) fraud on the U.S. Patent and Trademark

11 Office.

12     The defendant alleges that the plaintiffs have acquiesced in

13 the defendant's use of the "nissan" mark since 1995.

14 (Countercompl. ¶¶ 94, 96.)  The defendant further alleges that the

15 plaintiffs initiated this litigation in a bad-faith attempt to

16 acquire the "nissan.com" and "nissan.net" domain names.  (Id. at 15

17 & ¶ 133.)  The defendant also alleges that the plaintiffs have

18 purchased various Internet search terms, including "nissan" and

19 "nissan.com," in a malicious attempt to re-direct consumers from

20 the defendant's website to the plaintiffs' website.  (Id. ¶¶ 134-

21 37.)

22     The plaintiffs now move to dismiss Counterclaims 1-6 for

23 failure to state a claim.  The plaintiffs do not seek dismissal of

24 Counterclaim 7 at this time.

25 ///

26 ///

27 ///

28

1 **II. Discussion**

2     A.   <u>Legal Standard</u>

3     Dismissal under Rule 12(b)(6) is appropriate when it is clear

4 that no relief could be granted under any set of facts that could

5 be proven consistent with the allegations set forth in the

6 complaint. <u>See</u> <u>Newman v. Universal Pictures</u>, 813 F.2d 1519, 1521-

7 22 (9th Cir. 1987). The court must view all allegations in the

8 complaint in the light most favorable to the non-movant and must

9 accept all material allegations — as well as any reasonable

10 inferences to be drawn from them — as true   <u>See</u> <u>North Star Int'l</u>

11 <u>v. Arizona Corp. Comm'n</u>, 720 F.2d 578, 581 (9th Cir. 1983).

12     B.   <u>Counterclaim 1: "Reverse Domain Name Hijacking"</u>

13     In Counterclaim 1, for "reverse domain name hijacking," the

14 defendant alleges that the plaintiffs are "attempting to misuse

15 [their] intellectual property rights as they pertain to unrelated

16 products to extort the www.nissan.com and www nissan.net domain

17 names from Nissan Computer." (Countercompl. ¶ 140.) The defendant

18 seeks an injunction and compensatory and punitive damages. (<u>Id.</u>

19 ¶¶ 141-42.)

20     The plaintiffs argue that such a claim is not recognized by

21 the courts. Commentators use the term "reverse domain name

22 hijacking" to describe a bad faith effort by a trademark owner to

23 obtain a domain name from a legitimate registrant through

24 administrative dispute resolution procedures   <u>See, e.g.</u>, <u>McCarthy</u>

25 <u>on Trademarks</u> § 25:74 at 25-162 (1999); Carl Oppedahl, <u>Recent</u>

26 <u>Trademark Cases Examine Reverse Domain Name Hijacking</u>, 21 Hastings

27 Comm./Ent. L.J. 535, 543 (Spring 1999). ICANN, the entity

28 designated to manage domain names, also recognizes reverse domain

4

1 name hijacking as an abuse of the administrative dispute resolution

2 proceedings   (Opp. at 14.)

3     The defendant cites no authority recognizing an affirmative

4 claim for reverse domain name hijacking.  Rather, the defendant

5 argues that the Court should recognize such a claim on public

6 policy grounds.  The defendant argues that, due to high litigation

7 costs, existing remedies are insufficient to prevent trademark

8 holders from bullying legitimate domain name registrants.

9     The Court rejects this argument.  Where appropriate, a

10 litigant may resist abusive tactics by seeking Rule 11 sanctions,

11 attorney's fees for the prevailing party, state law tort damages,

12 or declaratory relief.  Recognition of a vaguely-defined "reverse

13 domain name hijacking" claim, as a supplemental remedy in the

14 Internet context, might bar otherwise meritorious claims allegedly

15 brought in "bad faith."  Accordingly, the Court grants the

16 plaintiffs' motion to dismiss Counterclaim 1 with prejudice.

17     C.   Counterclaim 6: "Trademark Misuse/Cancellation of

18          Registrations"

19     In Counterclaim 6, the defendant alleges that the plaintiffs'

20 actions constitute "trademark misuse."  (Countercompl. ¶ 160.)   The

21 defendant seeks cancellation of forty-nine of the plaintiffs'

22 trademarks and trademark applications.  (Id. ¶¶ 161-62.)

23     The plaintiffs argue that such a claim is not recognized by

24 the courts.  Misuse of a trademark in violation of the antitrust

25 laws is recognized by some courts as an affirmative defense to a

26 trademark infringement action.  See generally 5 McCarthy on

27 Trademarks § 31:91.  In addition, trademark misuse may be the basis

28 of an unclean hands defense.  See id. § 31:91 at 31-141.  However,

5

1  as with reverse domain name hijacking, the defendant cites no

2  authority recognizing an affirmative claim of trademark misuse.  In

3  the only relevant case cited by the parties, a district court on

4  similar facts declined to recognize trademark misuse as an

5  affirmative tort.  See Juno Online Servs., L.P. v. Juno Lighting,

6  Inc., 979 F. Supp. 684, 690 (N.D. Ill  1997).

7      Again, the defendant asks the Court to recognize a trademark

8  misuse claim on public policy grounds  For the reasons discussed

9  above, the Court declines to do so.  Accordingly, the Court grants

10  the plaintiffs' motion to dismiss Counterclaim 6 with prejudice.

11      D.    Noerr-Pennington Doctrine

12      The plaintiffs also argue that Counterclaims 1-6 are barred by

13  the Noerr-Pennington doctrine, because they are primarily based on

14  the plaintiffs' act of seeking redress in the courts.  The Court

15  need only address this argument as it applies to the defendant's

16  remaining state law claims, Counterclaims 2-5.

17      As originally formulated, the Noerr-Pennington doctrine

18  provided immunity from antitrust liability to those who petition

19  the government for redress.  See, e.g., Eastern R.R. Presidents

20  Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961);

21  United Mine Workers v. Pennington, 381 U.S. 657 (1965); California

22  Motor Transp. Co. v. Trucking Unltd., 404 U.S. 508 (1972).  Courts

23  have extended the doctrine to bar any tort claim "that has as its

24  gravamen constitutionally-protected petitioning activity," such as

25  seeking redress through litigation.  Gen-Probe, Inc. v. Amoco

26  Corp., Inc., 926 F. Supp. 948, 955-56 & n.11 (S.D. Cal. 1996)   The

27  California courts also apply Noerr-Pennington immunity, where

28  appropriate, to bar all tort claims except malicious prosecution

1   See Pacific Gas & Elec. Co. v. Bear Stearns & Co., 270 Cal. Rptr.

2   1, 9-11 (1990).

3       Under the Noerr-Pennington doctrine, immunity is lost if the

4   litigation or petitioning activity is shown to be a "sham."   To

5   fall under the sham exception, litigation must: (1) be "objectively

6   baseless in the sense that no reasonable litigant could

7   realistically expect success on the merits" and (2) conceal a bad

8   faith attempt to interfere with a competitor's business

9   relationships.   Professional Real Estate Investors, Inc. v.

10  Columbia Pictures Indus., Inc., 508 U.S. 49, 60-61 (1993).   "Only

11  if challenged litigation is objectively meritless may a court

12  examine the litigant's subjective motivation."   Id. at 60.

13  Moreover, in the Ninth Circuit, a complaint must "contain specific

14  allegations demonstrating that the Noerr-Pennington protections do

15  not apply."   Boone v. Redevelopment Agency, 841 F.2d 886, 894 (9th

16  Cir. 1988).   Conclusory allegations are insufficient to survive a

17  motion to dismiss.   See id.

18      Here, Counterclaims 2-5 are based in part on the plaintiffs'

19  alleged bad faith commencement of litigation.   The institution of a

20  lawsuit clearly constitutes protected petitioning activity under

21  the Noerr-Pennington doctrine.

22      The defendant argues that its counterclaims fall under the

23  sham exception to the doctrine.   However, the Countercomplaint does

24  not allege that the plaintiffs' lawsuit is objectively baseless.

25  Despite this pleading defect, the defendant argues that the

26  objective merit of the plaintiffs' lawsuit is a factual issue that

27  cannot be determined at this stage of the proceedings.   In

28  Hydranautics v. FilmTec Corp., 70 F.3d 533 (9th Cir. 1995), the

                                7

1 Ninth Circuit found that the existence of a sham exception to

2 Noerr-Pennington immunity was a factual issue, where the plaintiff

3 alleged that the defendant prevailed in a prior patent action

4 through intentional fraud.  Here, in Counterclaim 7, the defendant

5 alleges that the plaintiffs committed fraud on the U.S. Patent and

6 Trademark Office   (Countercompl. ¶¶ 165-69.)  However, the alleged

7 fraud concerns the plaintiffs' August 1998 application to register

8 the Nissan trademark in connection with software.  (Id.)  Unlike in

9 Hydranautics, the objective merit of this litigation does not turn

10 on the disputed trademark application.

11      More importantly, the Court has already granted the

12 plaintiffs' motion for a preliminary injunction, after finding that

13 the plaintiffs have shown a likelihood of success on the merits of

14 their trademark infringement claim.  (Order of Mar. 23, 2000.)  The

15 Court also made findings that the plaintiffs' Nissan mark was

16 strong, and that the defendant was "improperly appropriating the

17 plaintiffs' goodwill."  (Id. at 17-18.)  Based on the plaintiffs'

18 success thus far, the Court finds as a matter of law that the

19 plaintiffs' lawsuit is not objectively baseless, and that the sham

20 exception to the Noerr-Pennington doctrine is precluded.  Cf. In re

21 Circuit Breaker Litig., 984 F. Supp. 1267, 1273 (C.D. Cal. 1997).

22 In light of this finding, the Court need not address the

23 plaintiffs' subjective intent in commencing this litigation.

24 Accordingly, the Court dismisses Counterclaims 2-5 with prejudice,

25 to the extent that these claims are based on the plaintiffs'

26 commencement of litigation.

27      Counterclaims 2-5 are also based in part on other alleged

28 conduct.  Specifically, the defendant alleges that the plaintiffs

1  wrongfully diverted customers and made various misrepresentations
2  outside the scope of this litigation.  The Noerr-Pennington
3  doctrine does not immunize conduct outside the scope of litigation
4  or other petitioning activity.  See Rodime v. Seagate Tech., 174
5  F 3d 1294, 1307 (Fed. Cir. 1999).

6       The plaintiffs argue that the alleged nonlitigation conduct
7  cannot support actionable claims for relief.  However, the Court
8  need not address this argument, as it was improperly raised for the
9  first time in the plaintiffs' reply.  Accordingly, the Court denies
10 the plaintiffs' motion to dismiss Counterclaims 2-5, to the extent
11 that these claims are based on nonlitigation conduct.

12      E.    California's Litigation Privilege
13      In a related argument, the plaintiffs contend that the
14 defendant's state law claims are barred by California's litigation
15 privilege.  The plaintiffs note that Counterclaims 2-5 are premised
16 in part on the plaintiffs' alleged bad faith prosecution of this
17 lawsuit.

18      California law accords an absolute privilege to communications
19 made "[i]n any . . . judicial proceeding."  Cal. Civ. Code
20 § 47(b)(2).  The filing of a lawsuit, whether in good or bad faith,
21 falls squarely within the privilege.  See Abraham v. Lancaster
22 Community Hosp., 266 Cal. Rptr. 360, 376 (Ct. App. 1990).
23 Accordingly, California's litigation privilege provides an
24 independent reason to dismiss Counterclaims 2-5 with prejudice, to
25 the extent that these claims are based on the plaintiffs'
26 commencement of litigation.

27      However, as discussed above, Counterclaims 2-5 are also based
28 on alleged nonlitigation conduct.  The plaintiffs do not argue that

9

1 such conduct is protected by California's litigation privilege.
2 Accordingly, the Court denies the plaintiffs' motion to dismiss
3 Counterclaims 2-5, to the extent that these claims are based on
4 nonlitigation conduct.

5     F.   Counterclaim 2: Interference with Prospective Economic
6         Advantage

7     In Counterclaim 2, the defendant alleges interference with
8 prospective economic advantage.  The defendant alleges that, with
9 knowledge of the defendant's customer relationships, the plaintiffs
10 maliciously induced customers to stop dealing with the defendant,
11 and prevented customers from finding the defendant on the Internet.
12 (Countercompl. ¶¶ 144-47.)

13     To prevail on this claim, the defendant must establish:
14 (1) the existence of an economic relationship between the defendant
15 and third parties; (2) the plaintiffs' knowledge of this
16 relationship; (3) intentional acts by the plaintiffs designed to
17 disrupt this relationship; (4) actual disruption of the
18 relationship; and (5) resulting damage   See Rickards v. Canine Eye
19 Reg. Found., Inc., 704 F 2d 1449, 1456 (9th Cir. 1983) (citing
20 California law).  In addition, the defendant must establish that
21 the plaintiffs' interference "was wrongful 'by some measure beyond
22 the fact of the interference itself.'"   Della Penna v. Toyota Motor
23 Sales, U.S.A., Inc., 45 Cal. Rptr. 2d 436, 447 (1995) (citation
24 omitted).

25     The plaintiffs argue that this claim is barred because the
26 defendant has failed to allege independently wrongful conduct.
27 Specifically, the plaintiffs argue that the commencement of this
28 lawsuit is privileged under federal and state law.  This issue is

1 addressed above, in the discussion of the Noerr-Pennington doctrine
2 and California's litigation privilege.  In light of the findings
3 above, the Court need not separately address this issue in terms of
4 the elements of a tortious interference claim.

5     As discussed above, however, Counterclaim 2 is also based on
6 alleged nonlitigation conduct.  The Court need not address whether
7 such alleged conduct was independently wrongful, because this issue
8 was improperly raised for the first time in the plaintiffs' reply.
9 Accordingly, the Court denies the plaintiffs' motion to dismiss
10 Counterclaim 2, to the extent that this claim is based on
11 nonlitigation conduct.

12     G.   Counterclaim 3: Unfair Competition/Unfair Trade Practices
13     In Counterclaim 3, the defendant alleges that the "acts as set
14 forth above" constitute "unfair competition and unfair trade
15 practices in violation of California law."  (Countercompl ¶ 150.)

16     The plaintiffs argue that this claim is not stated with the
17 requisite particularity.  California law prohibits unfair
18 competition, defined to include "any unlawful, unfair or fraudulent
19 business act or practice and unfair, deceptive, untrue or
20 misleading advertising."  Cal. Bus & Prof. Code § 17200.
21 Under California pleading requirements, a party alleging unfair
22 business practices must identify the particular section of the
23 statutory scheme and "state with reasonable particularity the facts
24 supporting the statutory elements of the violation."  Khoury v.
25 Maly's of Cal., Inc., 17 Cal Rptr. 2d 708, 712 (Ct. App. 1993).
26 The plaintiffs argue that Counterclaim 3 is fatally vague because
27 it lacks a specified factual and legal basis.

28

1    The Court rejects this argument.  Although the parties do not
2  raise the issue, federal courts sitting in diversity must apply
3  federal procedural law.  See Hanna v. Plumer, 380 U.S. 460, 465
4  (1965); Jackson v. East Bay Hosp., 980 F. Supp. 1341, 1353-54 (N.D.
5  Cal 1997).  The Federal Rules of Civil Procedure require only a
6  "short and plain statement of the claim."  Fed  R. Civ. P. 8(a).
7  Here, Counterclaim 3 incorporates allegations that the plaintiffs
8  misrepresented their intent to purchase the "nissan.com" domain
9  name, and that the plaintiffs wrongfully diverted the defendant's
10 customers by purchasing Internet search terms.  These allegations
11 are sufficiently specific under federal pleading requirements.

12    The plaintiffs also argue that the defendant fails to state an
13 unfair competition claim, because these allegations "describe
14 facially lawful conduct."  The Court need not address this
15 argument, as it was improperly raised for the first time in the
16 plaintiffs' reply.  Accordingly, the Court denies the plaintiffs'
17 motion to dismiss Counterclaim 3 for lack of specificity.

18

19 **III. Conclusion**

20    For the reasons set forth above, the Court grants in part and
21 denies in part the plaintiffs' motion to dismiss Counterclaims 1-6.
22 Specifically, the Court:

23    (1)   dismisses Counterclaim 1, for "reverse domain name
24          hijacking," and Counterclaim 6, for "trademark
25          misuse/cancellation of registrations," with prejudice;
26 ///
27 ///
28 ///

12

    (2)   dismisses Counterclaims 2, 3, 4, and 5 with prejudice, to the extent that these claims are based on the plaintiffs' commencement of litigation; and

    (3)   denies the plaintiffs' motion to dismiss Counterclaims 2, 3, 4, and 5, to the extent that these claims are based on nonlitigation conduct.

IT IS SO ORDERED.

Dated: ___2-31-00___

DEAN D. PREGERSON
United States District Judge

13